**JEFFERSON BANK AND TRUST, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 87–C–279.**

United States District Court, D. Colorado.

April 27, 1988.

John A. Lobus, Lakewood, Colo., for plaintiff.

Henry Condell, Trial Atty., U.S. Dept. of Justice, Washington, D.C., Dahil D. Goss, Asst. U.S. Atty., Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Jefferson Bank and Trust commenced this action alleging that the defendant, through the Internal Revenue Service, wrongfully levied upon a demand deposit account maintained at the plaintiff bank. Jurisdiction is predicated upon 28 U.S.C. § 1346(e) and 26 U.S.C. § 7426(a).

The material facts in this case are not in dispute. On October 15, 1984, the plaintiff pursuant to a promissory note, loaned $300,000 to William G. Coffee & Associates, Inc. (the "taxpayer") and William G. Coffee individually. After an extension agreed to by the plaintiff, final payment on the note became due on October 15, 1986. As of that date, however, there remained due and owing to the plaintiff the principal sum of $89,827.83, plus interest.

Since October 15, 1984, when the promissory note was executed, the taxpayer had provided to the plaintiff the following security interest:

"Any deposits or other sums at any time credited by or due from the holder to any maker, endorser, or guarantor hereof and any securities or other property of any maker, endorser, or guarantor hereof in the possession of the holder may at all times be held and treated as collateral security for the payment of this obligation. The holder may apply or set off such deposits or other sums against said liabilities at any time in case of makers, but only with respect to matured liabilities in the case of endorsers or guarantors."

On December 12, 1986, the defendant, through the Internal Revenue Service, served upon the plaintiff two Notices of Levy against all property, rights to property, money, credits, and bank deposits of taxpayer then in possession of the the plaintiff. Plaintiff eventually was forced to pay to the defendant all of the $124,839.63 on deposit in the taxpayer's accounts at the plaintiff bank as of the date of the Notices of Levy, including $93,880.06 claimed by the plaintiff. Plaintiff contends that it is entitled to return of all sums due to it from the taxpayer on the date when it was forced to pay over those sums to the defendant from the accounts covered by its security interest.

Currently pending are the parties' cross-motions for summary judgment. Under Fed.R.Civ.P. 56(c) summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since there does not appear to be any material fact in dispute this case is ripe for disposition by summary judgment. The parties have briefed the issues and oral argument would not materially assist my decision.

Under 26 U.S.C. § 6321, the federal government can impose a federal tax lien upon "all property and rights to property" belonging to a delinquent taxpayer. Such a lien is created when the IRS makes an assessment against the taxpayer. *Pittsburgh Nat. Bank v. United States,* 657 F.2d 36, 38 (3d Cir.1981). If the taxpayer fails to pay the assessment after notice and a demand for payment, the IRS may levy upon "all property and rights to property" that belong to the taxpayer and are subject to a federal tax lien. 26 U.S.C. § 6321.

Plaintiff bank filed this action pursuant to 26 U.S.C. § 7426(a)(1). That section provides:

"If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States."

The regulations promulgated under this code section provide that a levy is wrongful if it "will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is *senior* to the Federal tax lien." IRC Reg. § 301.–7426–1(b)(iv)(d). (Emphasis added.) Security interests acquired by third parties prior to the time when notice of a tax lien is filed by the IRS are *senior* to a federal tax lien. 26 U.S.C. § 6323(a).

Plaintiff bank relies on two alternative theories to support its contention that the defendant wrongfully levied on the taxpayer's account. First it asserts that the levy was wrongful because the bank had a right to setoff the funds in the taxpayer's account and that after the setoff occurred, the taxpayer no longer had a property in-

terest in the account. Thus, the plaintiff bank argues, the taxpayer had no property at the bank that the IRS could attach. Second, the plaintiff argues that even if the taxpayer did have a property interest in the funds at the time of the levy, the bank had a prior lien on the account funds because of its security interest created by the promissory note, and its security interest was senior to the federal tax lien.

In response, the defendant contends that the levy was proper because: (1) while the bank had a right to setoff the funds in the taxpayer's account, the bank failed to exercise that right prior to the government's filing of the lien; (2) the bank did not have a security interest in the funds; and (3) any interest that the bank did have in the funds was not choate at the time the tax lien attached.

Thus the issues to be decided are: (1) whether the plaintiff bank had effected a setoff of the taxpayer's funds prior to the government's levy, thereby extinguishing the taxpayer's property interest in the funds; and (2) whether the plaintiff had a choate security interest in the funds that was senior to the government's tax lien. The bank will prevail if either of these issues is decided in its favor.

### A.  *Setoff.*

■ "State law defines the taxpayer's property interests to which a tax lien can attach." *Viva Ltd. v. United States,* 490 F.Supp. 1002, 1005 (D.Colo.1980). In *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960), the court stated:

> "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent that taxpayer had 'property' or 'rights' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute.'"

*See Allan v. Diamond T. Motor Car Co.,* 291 F.2d 115, 116 (10th Cir.1961) (state law controls the determination of whether the taxpayer has property or property rights to which the federal lien can attach). Thus a federal tax lien can only attach to a property interest of the taxpayer that exists under state law, and if the taxpayer does not own the property or have rights in the property under state law, then the federal tax lien can not attach to the property. *Viva Ltd.,* at 1005.

■ Plaintiff bank contends that the taxpayer had no property interest in the attached funds because the taxpayer's obligation to the bank had matured and the bank's right of setoff had been exercised prior to the Notices of Levy. Defendant does not dispute that the plaintiff had a *right* to setoff the funds and that the taxpayer's property interest would have been extinguished if the bank had exercised its setoff right. Rather, the defendant insists that the undisputed facts demonstrate that the bank failed to exercise its setoff right, and that "Colorado law is clear that some affirmative act is required on the part of the bank to effect the setoff and terminate the depositor's interest in the funds affected." (Defendant's brief, at 6.)

In support of its argument that its right of setoff extinguished the taxpayer's property interest in the funds, the plaintiff relies on *Pittsburgh Nat. Bank, supra,* 657 F.2d 36. There the Third Circuit held that a bank's right of setoff extinguished a depositor's rights in its checking account as soon as the debt owed by the depositor to the bank matured. However, the court in that case applied Pennsylvania law, and specifically relied on the docrine of "automatic setoff." Under that doctrine, a bank's right of setoff occurs by operation of law and the bank is not required to first make book entries charging one account and crediting the other before the debtor/depositor's property interest is extinguished.

Plaintiff has failed to provide any authority that Colorado has adopted the doctrine of automatic setoff. Indeed, "[a]uthority from other jurisdictions strongly supports

the position that an unexercised right of set off does *not* terminate the depositor's property rights in an account." *Peoples Nat. Bank of Washington v. United States*, 777 F.2d 459, 461 (9th Cir.1985) (*citing United States v. Citizens & Southern Nat. Bank*, 538 F.2d 1101, 1107 (5th Cir.1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1979 and 1980, 51 L.Ed.2d 792 (1977) (Georgia law); *United States v. Sterling Nat. Bank & Trust Co. of New York*, 494 F.2d 919, 922 (2d Cir.1974) (New York law); *United States v. Trans–World Bank*, 382 F.Supp. 1100, 1104 (C.D.Cal.1974) (California law)).

Moreover, cases interpreting Colorado law have at least implied that a bank must affirmatively exercise its setoff rights before the depositor's property interest in the account funds will be terminated. *See, e.g., Sherberg v. First Nat. Bank of Englewood*, 122 Colo. 407, 222 P.2d 782, 785 (1950) (" 'where bank has in its possession assets of debtor, bank *may* apply these assets to payment of a matured debt' ") (emphasis added); *Colorado Nat. Bank–Arvada v. Greaney*, 720 P.2d 611, 612 (Colo.App.1986) (rule governing setoff "is silent as to when the setoff must be *taken* ") (emphasis added).

Thus I conclude that under Colorado law the plaintiff bank did not effect a setoff prior to the government's Notices of Levy.

### B. *Security Interest.*

Plaintiff argues that even if the setoff did not occur before the Notices of Levy, it possessed a security interest in the funds, and that its security interest was senior to the tax lien. Once it has been determined under state law that the taxpayer owns property or rights to property, federal law is controlling for the purpose of determining whether a lien will attach to such property or rights to property. *Viva Ltd., supra*, 490 F.Supp. at 1005. Whether a bank's security interest created by a promissory note is one that may defeat a federal tax lien is a question that can be resolved only by applicable federal law. *Trust Company of Columbus v. United States*, 565 F.Supp. 61, 63–64 (M.D.Ga.1983), *aff'd*, 735 F.2d 447 (11th Cir.1984).

Under 26 U.S.C. § 6323(a), the government's lien arising on assessment under §§ 6321 and 6322 is not valid against a "purchaser," "holder of a security interest," "mechanic's lienor," or "judgment lien creditor" whose interest becomes "choate prior to the filing of a notice of tax lien." Under applicable federal law, a "security interest" is defined as an interest in property that is "protected at local law against a subsequent judgment lien arising out of an unsecured obligation," to the extent that "the holder has parted with money or money's worth." 26 U.S.C. § 6323(h)(1). It is undisputed that the bank parted with money, and therefore the issue that must be resolved is whether the bank's interest in the taxpayer's account would be protected by Colorado law against a subsequent judgment lien arising out of an unsecured obligation.

■ Colorado has adopted the Uniform Commercial Code, but its provisions for perfection of security interests do not apply to interests in deposit accounts. *Peoples Nat. Bank, supra*, 777 F.2d at 461. It is therefore necessary to look to the common law to determine whether the bank's interest in the taxpayer's account can defeat a subsequent judgment lien. *Id.*

Under Colorado law the relationship between a bank and a depositor is that of debtor and creditor, and the deposit of money into a general account transfers ownership of money to the bank. *Cox v. Metropolitan State Bank*, 138 Colo. 576, 336 P.2d 742 (1959). Plaintiff has not furnished any Colorado case expressly holding that a bank's interest in a general deposit account is protected against a subsequent judgment lien arising out of an unsecured obligation. Instead, the plaintiff relies on *Trust Company, supra*, to support its contention that it had a security interest in the account.

As in this case, the bank in *Trust Company* claimed that promissory notes created a security interest in the maker's funds in an account with the bank. The court held that the bank's interest in the funds of its customer's account was senior

to the federal tax lien because the bank's interest arose prior to the notice of tax lien.

Defendant, however, argues that *Trust Company* is distinguishable from this case because there, unlike here, control over the account was transferred to the bank. In support, the defendant relies on *Peoples Nat. Bank, supra*, 777 F.2d 459, 462, where the court stated:

> "Peoples relies upon *Trust Company of Columbus v. United States*, 735 F.2d 447 (11th Cir.1984), which held, under Georgia law, that a bank account had been successfully assigned to the bank, and that therefore the bank's interest defeated a tax lien. Under the agreement in *Trust Company*, however, the collateral was 'delivered, pledged, assigned, conveyed and transferred' to the Trust Company. *Id.* at 448. The depositor thus renounced rights to the account and transferred them to the bank. There was no similar agreement in this case."

Despite the above-quoted language from *Peoples,* I conclude that this case is similar to *Trust Company*, and I am persuaded by the reasoning in that case. While the agreement signed by the taxpayer in the present action did not include the words "deliver," "pledge," "assign," "convey" or "transfer," it unequivocally provided that sums in the possession of the bank, as holder of the promissory note, "may be held as collateral security" for payment of the maker's obligation. There was no reason for inclusion of the above-mentioned words of pledge and assignment because, as stated, under Colorado law the bank became the owner of money deposited into the taxpayer's general account,[1] and entered into a debtor creditor relationship with the depositor as to the amounts deposited.

The government, however, insists that the bank's interest was not choate when

the tax lien was filed. In order for a state-law created lien to be superior to a federal tax levy, it must be both choate and first in time. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963). It is undisputed that the obligation on the note had matured before the tax lien was filed. Therefore, the bank's interest clearly was "first in time."

Thus the remaining issue is whether the bank's interest was choate when the tax lien was filed. "To be choate, the lien must be perfected so that there is nothing more to be done, that the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Bell Credit Union*, 635 F.Supp. 501, 504 (D.Kan.1986).[2]

Defendant insists that the bank's purported security interest in the taxpayer's accounts was not choate when the lien was filed because the property at issue was neither fixed nor certain on the date of the notice of levy. (Defendant's brief, at 14.) Specifically, the defendant asserts that: (1) it is undisputed that the accounts were not opened by the taxpayer until several days after the promissory notes were signed, and therefore there was no security interest in the accounts because the accounts did not then exist; and (2) after the accounts were opened, the taxpayer made withdrawals, deposits, wrote checks and otherwise caused the account balances to fluctuate from day to day. *Id.*

In *Bell Credit Union, supra*, the court held that a credit union's liens on taxpayers' accounts for loans were not choate liens "if for no other reason than that the property subject to the lien is clearly not established and isolated." 635 F.Supp. at 504. The court stressed the fact that prior to the filing of the tax levy, "the depositors

---

1. In fact in *Peoples* the court stated that "[a] security agreement at common law constitutes a valid assignment only if it transfers title from the depositor to the bank." 777 F.2d at 462. Yet, as mentioned, under Colorado law a general deposit transfers ownership of the funds to the bank.

2. "These requirements of first in time and choateness give federal tax liens an extraordinary priority, justifiable only by the importance of securing adequate revenues to discharge national obligations, and limited therefore to tax liens." *Bell Credit Union, supra*, 635 F.Supp. at 504.

were free to withdraw any or all amounts in their accounts." *Id.*

*Bell Credit Union,* however, is distinguishable from the present action on three grounds. First the Bell Credit Union admitted that the depositors could withdraw all of the funds from their accounts up until the filing of the tax liens. Second the loans in *Bell Credit Union* were not in default when notice of levy was given. Third, as the court observed, "[u]nlike banks, credit unions do not receive 'deposits' creating a debtor/creditor relationship." *Id.* at 503–504. In contrast, the taxpayer's obligation in this case had matured at the time the tax lien attached.

The bank argues that "[m]aturity of the note, or default thereunder, is critical to choateness." (Plaintiff's reply brief, at 10.)[3] It further contends that after maturity or default, "[n]othing more must occur for the bank to have the absolute right to set off funds in the taxpayer's account," and that it "was not about to allow taxpayer to withdraw funds from its account so as to reduce the amount contained therein to an amount less than that owed to the plaintiff." (*Id.* at 11.) (*See id.* at 9: "Plaintiff monitored taxpayer's account on a daily basis to assure a sufficient balance in the account remained") (*citing* Deposition of Ted D. Warren, at 11, 18).

I conclude that under Colorado law the plaintiff bank had a security interest in the taxpayer's accounts in the amount of the taxpayer's matured obligation, and that the bank's interest was choate at the time of the Notice of Levy. When the notices were given the bank's security interest was such that there was nothing more to be done. The identity of the lienor, the property subject to the lien, and the amount of the lien were established. As observed by the plaintiff:

"The mere variation in the amount contained in [the] taxpayer's account[s] should not defeat the choateness of plaintiff's lien. To find so would be no differ-

ent than finding a variation in inventory or accounts receivable of a business would defeat the priority of a creditor's lien therein, or that even the variation in value of real estate would defeat the priority of a mortgage or deed of trust." (Reply brief, at 10.)

Notably, the defendant government has not furnished any authority to support its contention that the bank could have done more to perfect its security interest. As discussed, *supra,* the one case relied on by the defendant, *Bell Credit Union,* is distinguishable because there the obligations had not matured prior to the filing of the tax liens, and the credit union in that case admitted that prior to attachment of the tax liens the depositors were free to withdraw the entire balances from their accounts. The bank in this action has made no similar admission.

While the government asserts that "[f]unds continued to flow in and out of the accounts up to the time the notice of tax lien was filed and the notice of levy served" (*see* defendant's brief, at 14), it does not contend in its brief that the bank permitted the amount of the funds in the taxpayer's accounts to become less than the money owed once the debt had matured. Indeed, the government *admits* that after the debt had matured, "the bank monitored the account to ensure a minimum balance sufficient to satisfy the delinquent note." (Defendant's brief, at 3.)

The property in which the bank had a senior interest was extinguished by the defendant's levy, and the levy was therefore wrongful with respect to the plaintiff bank. 26 U.S.C. § 7426.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's motion for summary judgment is granted;

(2) Defendant's cross-motion for summary judgment is denied; and

(3) Defendant shall pay to the plaintiff $93,880.06, plus interest as provided

---

**3.** Indeed, the bank asserts that "[t]he courts have determined priority of a bank's security interest in funds in a taxpayer's account every time the debt had matured prior to service of notice of levy and the bank first paid the funds to the I.R.S., then commenced suit." (Plaintiff's reply brief, at 11.)

in 26 U.S.C. § 6621 from February 9, 1987.