**In re Roman G. WENINGER and Mary Madeleine Weninger, Debtors.**

**Bankruptcy No. 89–B–03463–A.**

United States Bankruptcy Court,
D. Colorado.

June 12, 1990.

Justin L. Garrett II, Washington, D.C., and Donald R. Wrobetz, Denver, Colo., for U.S.

## ORDER ON STIPULATED MOTION FOR SETOFF

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER is before the Court upon a Stipulated Motion for Setoff ("Motion") filed by World Savings & Loan Association ("World Savings") and the Chapter 7 Trustee on December 22, 1989. An objection to the Motion was filed January 8, 1990 by the United States on behalf of the Internal Revenue Service ("IRS"). World Savings filed a response to the objection on January 17, 1990. A hearing was set for April 18, 1990 at which time the Court took the matter under advisement.[1]

### I. *Background.*

On or about May 24, 1988, Roman G. Weninger borrowed some $22,553.76 from World Savings. In connection with the loan, he executed two Savings Account Loan Note and Security Agreements ("the Agreements").[2] Under the terms of the

1. Counsel for World Savings did not receive notice of the hearing from the Court and did not appear.

2. Roman G. Weninger executed the Agreements in his stated capacity as "trustee for Madeleine Weninger." Roman G. Weninger and [Mary] Madeleine Weninger, his wife, will be referred to herein as either the Weningers or the Debtors.

Agreements, World Savings was given security interests in two savings accounts deposited with World Savings ("the Accounts").[3] Each of the Accounts was to secure $11,276.88, one-half of the total loan amount. Lump-sum payment in full was due on November 24, 1988.

The IRS made assessments against the Weningers for unpaid federal income taxes on August 10, 1988. The IRS gave notice and demanded payment of the taxes, but the taxes remain unpaid. On August 11, 1988, the IRS filed notices of the federal tax liens against the Weningers.

The Weningers filed a Petition for relief under Chapter 11 of the Bankruptcy Code on March 20, 1989. The case was converted to Chapter 7 by this Court's Order entered September 29, 1989.

The Motion requests that World Savings be allowed to set off the amount due it under the Agreements against the amounts on deposit in the Accounts. World Savings alleges that an excess balance would exist in the Accounts following a setoff and agrees that such balance would be turned over to the Trustee accompanied by an accounting of the amounts set off.

The IRS objects on the ground that the Motion raises material questions regarding the priority of their lien interest in the Accounts. They request that the Motion be denied because they allege that the IRS possesses a prior choate lien on the funds at issue. World Savings' response asserts that their lien is superior to that held by the IRS.

## II. *Analysis.*

A. Did the Debtors possess property or rights to property to which the tax lien could attach?

■ This Court must first ascertain whether, and to what extent, the Accounts represent property or rights to property of the Debtors to which the IRS' lien could attach. *See, U.S. v. Cache Valley Bank,* 866 F.2d 1242, 1244 (10th Cir.1989); *U.S. v. Central Bank of Denver,* 843 F.2d 1300, 1303 (10th Cir.1988); *U.S. v. Wingfield,* 822 F.2d 1466, 1472 (10th Cir.1987); *cert dismissed sub nom Boulder County, Colo. v. U.S.,* 486 U.S. 1019, 108 S.Ct. 1762, 100 L.Ed.2d 222 (1988); *Aquilino v. U.S.,* 363 U.S. 509, 512, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Since the Internal Revenue Code creates no property rights but merely attaches federally defined consequences to rights created under state law, we must examine Colorado law. *See, e.g. Wingfield, supra* at 1472; *U.S. v. Nat'l Bank of Commerce,* 472 U.S. 713, 722, 727, 105 S.Ct. 2919, 2925, 2928, 86 L.Ed.2d 565 (1985); *Aquilino, supra* 363 U.S. at 513, 80 S.Ct. at 1280.

■ In Colorado, when funds are deposited into a general account, title to the funds passes to the bank.[4] *Jefferson Bank & Trust v. U.S.,* 894 F.2d 1241, 1243 (10th Cir.1990) *(Jefferson Bank & Trust II)*; *Glenn Justice Mortgage Co., Inc. v. First Nat'l Bank of Fort Collins,* 592 F.2d 567, 569 (10th Cir.1979); *Isenhart v. Monty,* 161 Colo. 589, 592, 423 P.2d 836, 838 (1967) (funds became part of the bank's general assets); *Cox v. Metropolitan State Bank, Inc.,* 138 Colo. 576, 584, 336 P.2d 742, 747 (1959) (ownership of funds is transferred to the bank); *Boettcher v. Colo. Nat'l Bank,* 15 Colo. 16, 21, 24 P. 582, 584 (1890), overruled on other grounds, 138 Colo. 576, 336 P.2d 742 (1959) (same).

■ The relationship that is created between the bank and the depositor is generally described as debtor-creditor. *Jefferson Bank & Trust II, supra* at 1243–1244;

---

3. The Agreements provide as follows:
   "*Security Interest.* As security for payment of all amounts due on this Note, Borrower hereby transfers, assigns and pledges the savings account designated above (the "Pledged Account") to the Association, together with any future additions thereto.

   •    •    •    •    •    •

   *Security.* You are giving a security interest in savings account number _____."

4. The term "bank" will be used to describe financial institutions including World Savings, a savings and loan association.

*Central Bank of Denver, supra* at 1304; *Isenhart, supra* 161 Colo. at 592, 423 P.2d at 838; *Rivera v. Central Bank & Trust Co.,* 155 Colo. 383, 385, 395 P.2d 11, 13 (1964); *Cox, supra* 138 Colo. at 584, 336 P.2d at 747; *American Nat'l Bank of Denver v. First Nat'l Bank of Denver,* 130 Colo. 557, 562, 277 P.2d 951, 954 (1954); *Boettcher, supra* 15 Colo. at 21–22, 24 P. at 584. *Accord, Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 242, 64 S.Ct. 599, 604, 88 L.Ed. 692 (1944). In this relationship the depositor retains a right to withdraw funds, which right is held to be a chose in action. *Jefferson Bank & Trust II, supra* at 1244; *Boettcher, supra* 15 Colo. at 22, 24 P. at 584 (depositor retains a chose in action not the specific money or a right to any specific money which was deposited). The incidents of ownership of a chose in action are the rights or privileges to deal with it as one may deal with his own property. *In re Hamilton's Estate,* 113 Colo. 141, 148, 154 P.2d 1008, 1011 (1945).

■ A chose in action constitutes property or rights to property within the meaning of the Internal Revenue Code. 26 U.S.C. §§ 6321, 6331(a).[5] *Jefferson Bank & Trust II, supra* at 1244; *Central Bank of Denver, supra* at 1304; *Nat'l Bank of Com-merce, supra* 472 U.S. at 721, 105 S.Ct. at 2925; *Hamilton's Estate, supra* 113 Colo. at 148, 154 P.2d at 1011. Congress, by using the broad term "all property and rights to property," revealed that it meant to reach every interest in property that a taxpayer might have. *Nat'l Bank of Commerce, supra* 472 U.S. at 719–720, 105 S.Ct. at 2924; *Glass City Bank of Jeanette, Pa. v. U.S.,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945) ("[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.").

■ Under the Internal Revenue Code, a federal lien is created at the time unpaid taxes are assessed. The lien attaches[6] to all property and rights to property held by the taxpayer when the taxpayer refuses or neglects to pay the taxes after the IRS demands such payment. 26 U.S.C. §§ 6321, 6322.[7] *Jefferson Bank & Trust II, supra* at 1243; *Cache Valley Bank, supra* at 1244; *Nat'l Bank of Commerce, supra* 472 U.S. at 719, 105 S.Ct. at 2924; *U.S. v. Pioneer American Insurance Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963); *U.S. v. City of New Britain, Conn.,* 347 U.S. 81, 83, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954).[8] Since a

5. Section 6321 of Title 26, United States Code, provides, in pertinent part:
   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon *all property and rights to property,* whether real or personal, belonging to such person." (Emphasis added.)
   Section 6331(a) of Title 26, United States Code, provides, in pertinent part:
   "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon *all property and rights to property* ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." (Emphasis added.)

6. "Attach" is synonymous with "arise." *U.S. v. Central Bank of Denver,* 843 F.2d 1300, 1306 n. 6 (10th Cir.1988).

7. For 26 U.S.C. § 6321 *see supra* n. 5. Section 6322 of Title 26, United States Code, provides as follows:
   "Unless another date is specifically fixed by law, the lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

8. The lien also attaches to after-acquired property. *Texas Commerce Bank—Fort Worth, N.A. v. U.S.,* 896 F.2d 152, 161–162 (5th Cir.1990); *U.S. v. Cache Valley Bank,* 866 F.2d 1242, 1244 (10th Cir.1989); *Glass City Bank of Jeanette, Pa. v. U.S.,* 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945). A subsequent transfer of the property does not affect the lien because the property passes *cum onere. Cache Valley Bank, supra* at 1244–1245; *U.S. v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983). The lien, however, cannot extend beyond the property interests held by the delinquent taxpayer. *Id.; Matter of Carlson,* 580 F.2d 1365, 1369 (10th Cir.1978). *See also,* 4 B. Bittker, Federal Taxation of Income, Estates, & Gifts, ¶ 111.5.4 at 111–102 (1981) ("[t]he tax collector *not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out.").

chose in action is property within the meaning of the Internal Revenue Code, the August 1988 assessment created a lien on the Accounts.

Once it has been determined that a tax lien has attached to a state-created interest, we enter the province of federal law. *Central Bank of Denver, supra* at 1304; *Wingfield, supra* at 1472; *Nat'l Bank of Commerce, supra* 472 U.S. at 722–723, 105 S.Ct. at 2925; *U.S. v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Pioneer American Insurance, supra* 374 U.S. at 88, 83 S.Ct. at 1655; *Aquilino, supra* 363 U.S. at 513–514, 80 S.Ct. at 1280–1281. This approach maintains the proper balance between the legitimate and traditional interests of a state in creating and defining the property interests of its citizens and the necessity of uniform administration and enforcement of federal revenue statutes. *Aquilino, supra* 363 U.S. at 514, 80 S.Ct. at 1281; *Bull v. U.S.*, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) ("[t]axes are the lifeblood of government and their prompt and certain availability an imperious need."). The effect of a tax lien is that a third-party holds property of the taxpayer, or a property interest in the taxpayer, subject to the tax lien *unless* the third-party has a prior lien or comes within one of the exceptions in 26 U.S.C. § 6323. *Cache Valley Bank, supra* at 1244.

**B. Does World Savings have a superior interest in the property?**

World Savings asserts that it had a prior perfected security interest in the Accounts as of May 24, 1988, well before the IRS assessment and notice in August 1988. C.R.S. § 4–9–305 (1989 Cum.Supp.). According to the Internal Revenue Code, a security interest exists when (1) the subject property is in existence at the time the IRS' notice is filed, (2) the interest has become protected under local law against subsequent judgment liens arising out of unsecured obligations, and (3) the holder has parted with money or money's worth. 26 U.S.C. § 6323(h)(1). It is undisputed that the savings accounts existed at the time that the IRS filed their notice. It is also apparent that World Savings parted with money. The only remaining issue involves whether or not World Savings' interest had become protected under Colorado law before the IRS' lien attached.

Colorado has adopted the Uniform Commercial Code but its provisions regarding the perfection of security interests do not apply to interests in deposit accounts. C.R.S. §§ 4–9–104(L), 4–9–105(1)(e) (1989 Cum.Supp.). *Accord, Jefferson Bank & Trust v. U.S.*, 684 F.Supp. 1542, 1545 (D.Colo.1988), *aff'd* 894 F.2d 1241 (10th Cir. 1990) (*Jefferson Bank & Trust I*); *Central Bank of Denver, supra* at 1308. *Accord, People's Nat'l Bank of Washington v. U.S.*, 777 F.2d 459 (9th Cir.1985). It becomes necessary, therefore, to look to Colorado common law to determine whether or not World Savings' security interest was perfected.

Under the common law, a creditor may protect its interest in a deposit account by means of a pledge or an assignment. *Jefferson Bank & Trust II, supra* at 1244; *People's Nat'l Bank of Washington, supra* at 461; *U.S. v. Third Nat'l Bank of Nashville, Tenn.*, 589 F.Supp. 155, 158 n. 3 (M.D.Tenn.1984). For a pledge to be effective, an affirmative act, such as the transfer of an indispensable instrument, must have occurred. *Jefferson Bank & Trust II, supra* at 1244; *U.S. v. Bell Credit Union*, 860 F.2d 365, 371 (10th Cir.1988) (*Bell Credit Union II*) (if not represented by an indispensable instrument, the assignment of a chose in action for security purposes is not considered in the Restatement of Security as a pledge. No pledge was found to exist quite apart from other disqualifying facts such as that the chose in action was not held openly or adversely to the taxpayer or that the holder did not exercise its power to control.); Restatement of Security § 1 Comment a (1941).

An effective assignment is accomplished if title to the property is transferred. *Jefferson Bank & Trust II, supra* at 1244 (finding assignment based upon the Colorado law which transfers title to funds upon deposit). *Contra, People's Nat'l*

*Bank of Washington, supra* at 462 ("the security agreement transferred to the bank no more control over or interest in the account to the bank than the bank would have had if there had been no 'agreement'.").[9] In this situation, World Savings has an interest which would be protected under Colorado law.

An additional requirement exists, however, which returns our attention to federal law. Even though an interest is protected under state law, priority as against a federal lien depends upon when the interest becomes choate.[10] A choate determination depends upon federal law. *Assured Investment & Loan, Inc. v. U.S.,* 732 F.Supp. 94, 95 (D.Kan.1990); *Samco Mortgage Corp. v. Keehn,* 721 F.Supp. 1209, 1211 (D.Wyo.1989); *Central Bank of Denver, supra* at 1307; *Wingfield, supra* at 1473; *Bell Credit Union I, supra* at 504; *U.S. v. Hunt,* 513 F.2d 129, 133 (10th Cir.1975); *U.S. v. Security Trust & Savings Bank of San Diego,* 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). Liens are perfected in the sense that there is nothing more to be done to have a choate lien when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. *Jefferson Bank & Trust II, supra* at 1244; *Samco Mortgage, supra* at 1211; *Central Bank of Denver, supra* at 1307; *U.S. v. Bell Credit Union,* 635 F.Supp. 501, 504 (D.Kan.1986), *aff'd* 860 F.2d 365 (10th Cir. 1988) (*Bell Credit Union I*); *Pioneer American Insurance, supra* 374 U.S. at 87-91, 83 S.Ct. at 1654-56; *City of New Britain, supra* 347 U.S. at 84, 74 S.Ct. at 369.[11]

Since no priority schedule is set forth in the Internal Revenue Code, priority is determined by the principle of "first in time, first in right." *Central Bank of Denver, supra* at 1306; *Wingfield, supra* at 1473; *Bell Credit Union I, supra* at 504; *Pioneer American Insurance, supra* 374 U.S. at 87, 83 S.Ct. at 1654; *City of New Britain, supra* 347 U.S. at 85-86, 74 S.Ct. at 370; *Rankin v. Scott,* 25 U.S. (12 Wheat.) 177, 6 L.Ed. 592 (1827).[12] Choate state-created liens take priority over later federal tax liens; inchoate liens do not. *Assured Investment & Loan, supra* at 95;

---

9. *Central Bank of Denver* cited *People's Nat'l Bank of Washington v. U.S.,* 777 F.2d 459, 461–462 (9th Cir.1985) and found that "[t]he bank's interest in the account is not manifested by an assignment or pledge...." *Central Bank of Denver, supra* at 1305. The Court seemed to require an affirmative act to effectuate an assignment. *Jefferson Bank & Trust v. U.S.,* 894 F.2d 1241 (10th Cir.1990) (*Jefferson Bank & Trust II*) set the matter straight. *Jefferson Bank & Trust II, supra* at 1244.

10. The Tenth Circuit continues to apply this additional requirement in cases falling under 26 U.S.C. § 6323(a) and (h) concerning priority for perfected security interests despite previous dicta to the contrary. *Jefferson Bank & Trust II, supra* at 1244 ("[i]n addition to having protection under state law, Jefferson Bank's interest in the taxpayer's deposit accounts *must have been choate* at the time the government gave the bank notice of the tax liens") (emphasis added). *See also, Central Bank of Denver, supra* at 1307. *Compare, U.S. v. Bell Credit Union,* 860 F.2d 365, 371 (10th Cir.1988) (*Bell Credit Union II*). *See also, Donald v. Madison Industries, Inc.,* 483 F.2d 837, 840 (10th Cir.1973).

11. The characterization of a lien as perfected under state law is not conclusive as against the federal government. *Central Bank of Denver, supra* at 1306; *U.S. v. Nat'l Bank of Commerce,* 472 U.S. 713, 723, 105 S.Ct. 2919, 2926, 86 L.Ed.2d 565 (1985); *U.S. v. Security Trust & Savings Bank of San Diego,* 340 U.S. 47, 49–50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950) ("although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by [the U.S. Supreme Court], on the other hand, if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.'") *quoting People of the State of Illinois ex rel Gordon v. Campbell,* 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348 (1946).

12. An exception to the general rule of "first in time, first in right" exists to protect certain parties. Section 6323 of Title 26, United States Code, reads in pertinent part, as follows:

"(a) *Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.* The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." (Emphasis in original.)

As the IRS complied with the notice requirement on August 11, 1988, the lien came into existence on that date.

*Central Bank of Denver, supra* at 1306–1307; *Pioneer American Insurance, supra* 374 U.S. at 89, 83 S.Ct. at 1655; *People of the State of New York v. Maclay,* 288 U.S. 290, 294, 53 S.Ct. 323, 324, 77 L.Ed. 754 (1933).[13]

When dealing with security interests in a deposit account, problems arise when the depositor is allowed to deposit into or withdraw from the account. A timing problem arises when a depositor is allowed to continue to make deposits. The bank's security interest can only arise post-deposit while the tax lien attaches to all property or rights in property held by the delinquent taxpayer. Any deposits made after the IRS filed lien notices, therefore, enter the taxpayer's and thus the bank's hands already impressed with a tax lien. *Texas Commerce Bank—Fort Worth, N.A. v. U.S.,* 896 F.2d 152, 162 (5th Cir.1990) (cases cited).

On the other hand, when a depositor is free to withdraw funds from its account many courts find that all of the elements which determine when an interest is choate are not met. *See, Central Bank of Denver, supra* at 1308–1309 (identity of property and amount of lien as a sum certain are not established); *Bell Credit Union II, supra* at 372 ("[t]he amount of the lien was discretionary with the taxpayers because they could withdraw, and reduce any lien, without restriction."); *Bell Credit Union I, supra* at 504 (bank's lien not choate because the property subject to the lien was "clearly not established and isolated."); *Nat'l Bank of Commerce, supra* 472 U.S. at 725–726, 105 S.Ct. at 2927 (common

sense tells us that the right to withdraw qualifies as a right in property and in levy proceedings the IRS steps into a taxpayer's shoes and acquires whatever rights the taxpayer possesses. "It is inconceivable that Congress ... intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor.") *quoting U.S. v. First Nat'l Bank of Arizona,* 348 F.Supp. 388, 389 (D.Ariz.1970) *aff'd* 458 F.2d 513 (9th Cir. 1972); *Third Nat'l Bank of Nashville, supra* at 158 n. 3 (the only way a security interest in a bank account can take priority over a federal tax lien is for the secured party to cut off the depositor's access to the funds completely.). *But see, Jefferson Bank & Trust II, supra* at 1244 (the bank continually monitored the account, had control of the money in the accounts and could have prevented withdrawals);[14] *U.S. v. Harris,* 249 F.Supp. 221, 223–224 (W.D.La. 1966) (the amount is the amount on deposit or the value of credit not to exceed the amount of debt. Fluctuation does not matter. Since the amount is ascertainable at any given time the security interest is perfected as to amount.)

The present case is factually similar to the *Bell Credit Union* cases. The fact that the Weningers' obligation to World Savings had not matured before the tax lien arose is critical and determinative on both the issues of whether World Savings' lien was "first in time" and whether the lien had achieved a choate status. *See, Jefferson Bank & Trust II, supra* at 1245 ("the bank had acquired a common law security interest in the sums in the posses-

---

13. The requirements of "first in time" and achieving a choate status give federal tax liens an extraordinary priority justified by the importance of securing adequate revenues to discharge national obligations. *U.S. v. Bell Credit Union,* 635 F.Supp. 501, 504 (D.Kan.1986), *aff'd* 860 F.2d 365 (10th Cir.1988) (*Bell Credit Union I*).

14. *Jefferson Bank & Trust II* may be distinguished from the present case because, unlike the note in the *Jefferson Bank & Trust* cases, the Weningers' notes were *not* in default. In fact, payment was not due until *after* the notice of tax liens was filed. The district court in *Jefferson Bank & Trust v. U.S.,* 684 F.Supp. 1542

(D.Colo.1988) *aff'd* 894 F.2d 1241 (10th Cir. 1990) (*Jefferson Bank & Trust I*) distinguished *Bell Credit Union I* on that factual basis. *Jefferson Bank & Trust I, supra* at 1547 ("*Bell Credit Union,* however, is distinguishable from the present action on three grounds.... [T]he loans in *Bell Credit Union* were *not in default* when notice of levy was given.... In contrast, the taxpayer's obligation in this case had *matured* at the time the tax lien attached.... I conclude that under Colorado law the plaintiff bank had a security interest in the taxpayer's accounts in the amount of the taxpayer's matured obligation, and that the bank's interest was choate at the time of the Notice of Levy.") (Emphasis added.)

sion of the bank by the note provision ... and by the deposit made by the taxpayer, the *note had matured before filing* of the tax lien, and *thus* the bank's interest was '*first in time*' and prevailed.") (emphasis added); *Jefferson Bank & Trust I, supra* at 1546 ("[i]t is undisputed that the obligation on the note had *matured* before the tax lien was filed. Therefore, the bank's interest clearly was 'first in time'.") (emphasis added). Upon maturity, the third choate element is established, the amount of the lien is a sum certain. The Tenth Circuit has even overlooked the problems associated with a depositor's continued right to withdraw funds if the underlying obligation matures before the tax lien arises. In *Jefferson Bank & Trust II* the court reasoned as follows:

> The government argues that so long as the taxpayer had the right to withdraw money from the account the property subject to the lien was not established. *The loan had matured* at the time the government gave the bank notice of its liens. *The amount owing* the bank *was* a *definite* amount of $89,827.83, plus interest at a set rate.... The bank had control of the monies in the accounts and could have prevented withdrawal of those monies. In fact, the bank continually monitored the accounts to assure that funds were maintained in an amount equal to or greater than the loan. The amount of lien was established and definite, and [the bank's] interest was choate at the time it received notice of the government's tax lien.
>
> *Jefferson Bank & Trust II, supra* at 1244 (emphasis added).

■■■ Before maturity, a bank must act to either restrict access to the funds or to exercise the lien by setoff prior to the date of the tax lien in order for its interest to be considered choate for priority.[15] *Bell Credit Union II, supra* at 371. Absent such actions, the amount of the lien remains discretionary with a depositor because a depositor could withdraw, and thereby reduce or destroy any lien, without restriction. *Id.* at 372.

### III. *Conclusion.*

■■■ This Court, therefore, finds that the Weningers held a chose in action at the time the IRS filed notice of levy which chose in action constituted property or rights to property within the meaning of the Internal Revenue Code. The chose in action is subject to a lien in favor of the IRS which arose August 11, 1988. Under Colorado law, World Savings received title to the funds upon deposit thereby creating an effective assignment. Even though World Savings' interest is protected under state law it must also meet choate requirements which are interpreted under federal law. The identity of the lienor, property subject to the lien, and the amount of the lien in a sum certain must be established prior to the time that the tax lien attaches. When a depositor retains the right to make deposits and withdrawals *and* the underlying obligation has not matured before such levy, the choate requirements have not been sufficiently established. The IRS' lien takes priority over the security interest held by World Savings in the Accounts.

Accordingly, this Court cannot approve the proffered stipulated motion for setoff.

For the reasons cited above, it is

ORDERED that the Stipulated Motion for Setoff filed by World Savings & Loan

---

**15.** In Colorado, a bank has a right of setoff when it is in possession of assets of a debtor who owes the bank a debt which has either matured or fallen into default. *Sherberg v. First Nat'l Bank of Englewood,* 122 Colo. 407, 412, 222 P.2d 782, 784 (1950). The pivotal time is when setoff is actually made. *Central Bank of Denver, supra* at 1309. When a deposit account is currently vulnerable to a bank's right to setoff but the bank has not chosen to exercise this right, the depositor's interest remains property or rights to property within the meaning of the Internal Revenue Code. *Cache Valley Bank, su-* *pra* at 1245; *Central Bank of Denver, supra* at 1308–1310 (until bank affirmatively acts its right of setoff is inchoate and contingent). A bank must demonstrate an obvious decision to exercise the right to setoff. Generally, three steps are necessary: (1) a decision to exercise the right; (2) some action that accomplishes the setoff; and (3) some record which evidences that the right to setoff has been exercised. *Id.* If these steps are not taken before the notice of levy, "[t]he cases are legion holding that a federal tax lien prevails." *Bell Credit Union II, supra* at 369 (cases cited).

Association and the Chapter 7 Trustee is DENIED.